IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| WILLIAM T. WOODROW, | * | |
| and | * | |
| SUSAN L. WOODROW, | * | Civil Action No.: 8:09-cv-01505-PJM |
| and | * | |
| TONY DAVIS, | * | |
| Plaintiffs, | * | |
| v. | * | |
| JACOB GEESING, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF WILSHIRE CREDIT CORPORATION'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED VERIFIED COMPLAINT**

**Table of Contents**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION AND BACKGROUND | 1 |
| II. | STANDARD GOVERNING THE GRANTING OF A MOTION TO DISMISS | 3 |
| III. | ARGUMENT | 5 |
|   | A. First Cause of Action: Plaintiffs Have Failed To State A Claim Under RICO. | 5 |
|   | B. Second And Third Causes Of Action: Plaintiffs Fail To State A Claim For Violation Of The Truth In Lending Act And The Home Ownership Equity Protection Act. | 8 |
|   | 1. Servicers of mortgage loans, like Wilshire here, have no liability for any alleged violation of TILA or HOEPA. | 8 |
|   | 2. To the extent Plaintiffs seek monetary damages for alleged disclosure violations of TILA, that claim is time-barred by the applicable one-year statute of limitations. | 10 |
|   | 3. Plaintiffs have failed to allege sufficient facts demonstrating that the subject mortgage loan is subject to HOEPA. | 11 |
|   | C. Fourth Cause of Action: Plaintiffs Have Failed To Plead The Elements Of Fraud With The Requisite Specificity And Have Otherwise Failed To State A Claim For Fraud And Deceit. | 13 |
|   | D. Fifth Cause Of Action: Plaintiffs Fail To State A Claim For Breach Of Contract. | 14 |
|   | E. Sixth Cause Of Action: Plaintiffs Cannot State A Claim For "Predatory Lending." | 15 |
|   | F. Seventh Cause Of Action: Plaintiffs Fail To State A Claim For Violation Of Their Civil Rights Under 42 U.S.C. §§ 1981 & 1983. | 16 |
|   | G. Eighth Cause Of Action: Plaintiffs Cannot State A Claim For "Wrongful Foreclosure." | 17 |
|   | H. Ninth Cause of Action: Plaintiffs Cannot State A Claim For Breach Of The Duty Of Good Faith And Fair Dealing. | 17 |
|   | I. Tenth Cause of Action: Plaintiffs Fail To State A Claim For Injunctive Relief. | 18 |
| IV. | CONCLUSION | 18 |

Defendant Wilshire Credit Corporation ("Wilshire"), by and through its undersigned counsel, submits this memorandum of law in support of its motion to dismiss the first amended verified complaint ("amended complaint") filed by Plaintiffs William T. Woodrow, Susan L. Woodrow, and Tony Davis.[1]  The amended complaint must be dismissed as against Wilshire because, even accepting the alleged facts as true, Plaintiffs have failed to state a claim against Wilshire upon which relief can be granted.

## I.   INTRODUCTION AND BACKGROUND

This matter arises out of the refinancing of a mortgage on Plaintiffs William T. Woodrow and Susan L. Woodrow's home.  According to the amended complaint, the Woodrows refinanced the mortgage on their home through Defendant Wilmington Finance, Inc. in September 2006.  Amended Complaint, ¶¶ 13-14.  While not a participant in the refinancing transaction, Plaintiff Tony Davis subsequently acquired some type of equity interest in the secured property in May 2009.  *Id., ¶* 21.

The Woodrows' refinanced mortgage loan was brokered by Defendant Altabanc Financial Corporation and serviced by Wilshire.  *See* Amended Complaint, ¶¶ 8, 10-11.  The Woodrows made payments on the refinanced loan until they suffered financial setbacks, which ostensibly prevented them from making timely and/or complete payments.  *Id*., ¶ 16.  As a result, foreclosure proceedings were initiated.  *Id*., ¶ 17.  In connection with those proceedings, the Woodrows requested the lender to

---

[1] Plaintiffs William T. Woodrow and Susan L. Woodrow are pursuing this action *pro se*.  Plaintiff Tony Davis appears to be doing the same, but Mr. Davis is also an attorney in Austin, Texas.

produce the "wet ink signature note," and when that request was denied by the "corrupt state court,"[2] Plaintiffs "removed" the foreclosure action to this court. *Id.,* ¶ 20.

Plaintiffs' amended complaint sets forth ten "causes of action," the first three of which allege the violation of various federal statutes:

| | |
|---|---|
| First Cause of Action: | Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et seq*., based on mail and wire fraud. *See* Amended Complaint, ¶¶ 24-31. |
| Second Cause of Action: | Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.,* related to the alleged failure to make certain disclosures during the refinanced loan transaction. *See* Amended Complaint, ¶¶ 33-36. |
| Third Cause of Action: | Violation of Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. §§ 1640, *et seq.,* related to the alleged failure to make certain disclosures during the refinanced loan transaction. *See* Amended Complaint, ¶¶ 38-42. |

These statutory claims are raised against all defendants and contain no specific allegations against Wilshire. They are also deficient as a matter of law and therefore subject to dismissal for failing to state a claim.

The remaining "causes of action" in Plaintiffs' amended complaint raise various common law claims and one federal claim: fraud and deceit (Fourth Cause of Action), breach of contract (Fifth Cause of Action), "predatory lending" (Sixth Cause of Action), civil rights violations (Seventh Cause of Action),"wrongful foreclosure" (Eighth Cause of Action), breach of implied covenant of good faith and fair dealing (Ninth Cause of Action), and Injunctive Relief (Tenth Cause of Action). The elements of these counts are not sufficiently pled in the amended complaint nor do Plaintiffs provide any factual

---

[2] Without any factual support, Plaintiffs allege that "the judge in the state court case received campaign contributions from the law firm representing some or all of the parties in interest, and therefore had an automatic conflict of interest in these proceedings." Amended Complaint, ¶ 20.

2

support for them. As with Plaintiffs' federal statutory claims, their common law claims and civil rights violation claim are predicated on vague and conclusory allegations, the substance of which do not "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Wilshire therefore moves for dismissal of Plaintiffs' amended complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.     STANDARD GOVERNING THE GRANTING OF A MOTION TO DISMISS

The purpose of a Rule 12(b)(6) motion is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint while preserving judicial resources and avoiding unnecessary discovery. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), *cert. denied*, 514 U.S. 1007 (1995). On May 18, 2009, the Supreme Court rendered its opinion in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) and reiterated in a strongly-worded opinion that the pleading requirements of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) should be rigorously enforced by the lower courts when considering a Rule 12(b) motion to dismiss a complaint. The Court explained that while a complaint attacked by a Rule 12(b)(6) motion does not need "detailed factual allegations," Rule 8(a) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b) motion, the Court instructed lower courts to consider "[t]wo working principles." *Iqbal,* 129 S. Ct. at 1949. *First*, a court is not bound to accept as true legal

3

conclusions couched as factual allegations. To the contrary, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949. *Second*, "[t]o survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis added). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

To guide lower courts on the "plausibility" principle, the Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent" with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1950 (internal citations omitted). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In short, under *Iqbal* and *Twombly*, a complaint must contain direct and plausible allegations supporting all material elements necessary to sustain recovery under a viable legal theory in order to survive a motion to dismiss under Rule 12(b)(6). A complaint should be dismissed, when, on its face, the complaint is devoid of facts necessary for the plaintiff to prevail under the causes of action asserted, or when the complaint itself discloses facts that necessarily defeat the causes of action pled.

In that the amended complaint in this case includes fraud-based claims, the Court must also be mindful of the requirements of Rule 9(b), which sets forth a heightened pleading standard for claims of

4

fraud, not only when they are stated as fraud *per se*, but also when the gravaman of the claims sound in fraud.  *See* Fed. R. Civ. P. 9; *see also Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000).

Even accepting the facts and inferences set forth in the amended complaint as true, Plaintiffs' allegations fall far short of the standards articulated in *Iqbal* and *Twombly*.  On its face, Plaintiffs' amended complaint fails to establish any plausible claim against Wilshire upon which relief can be granted.

### III.   ARGUMENT

**A.   First Cause of Action: Plaintiffs Have Failed To State A Claim Under RICO.**

When this Court reviews the "Civil RICO" allegations in Plaintiffs' First Cause of Action, it will note that there are no allegations regarding specific conspiratorial agreements, no allegations of acts in furtherance of the conspiracy, no specific conspirators named, and no "indictable offenses" provided. Rather, Plaintiffs' claim is limited to bare, conclusory allegations that "Defendants" (i) "[b]ackdat[ed] documents prepared in connection with the transaction," (ii) "[f]ail[ed] to make available and to maintain for inspection the original blue ink signature of the note," (iii) "[f]ail[ed] to properly record transfers of the note," and (iv) "[k]nowingly and intentionally overbill[ed] Plaintiffs."  Amended Complaint, ¶ 26.  None of these statements adequately alleges factual elements that could support a claim under RICO.

"To test the legal sufficiency of [the claim], [we] must begin with an outline of RICO's requirement for recovery." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 396 (E.D. Va. 2003). "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  The plaintiff must, of course, alleged each of these elements to state a claim." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Here, Plaintiffs contend that "Defendants

5

regularly used the United States mails and wire services" for the purposes of "obtaining credit information, receiving payments by mail, mailing collection letters . . . and mailing other documents related to the loan." *See* Amended Complaint, ¶ 28. The bare act of using the mail system does not automatically rise to the level of "racketeering" for purposes of RICO. "Racketeering activity" means "any act or threat involving" specified state-law crimes, any "act" indictable under specific federal statutes, and certain federal "offenses." 18 U.S.C. § 1961(1).

While Plaintiffs have attempted to parrot the statutory requirements, "[t]hreadbare recitals of the elements of [RICO], supported by mere conclusory statements, [will] not suffice." *Iqbal,* 129 S. Ct. at 1949. To survive a motion to dismiss a RICO claim, a "plaintiff must plead [the] circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (quoting *Schreiber Distributing Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986)) (internal quotations omitted); s*ee also Windsor Assoc., Inc. v. Greenfeld*, 564 F. Supp. 273, 279-80 (D. Md. 1983) (applying Rule 9(b) to RICO claim predicated on mail fraud). The Rule 9(b) problem is exacerbated in cases such as this one where multiple defendants are involved and the pleading alleges some type of "fraudulent scheme" without clearly identifying which defendant played which role. *See Wang Laboratories, Inc. v. Burts*, 612 F. Supp. 441, 445 (D. Md. 1984) (dismissing some defendants in RICO suit predicated on mail fraud where plaintiff "group[ed] all twelve defendants together under the heading of 'defendants' in three conclusory paragraphs").

Nothing in the amended complaint provides any specific fact pattern sufficient to support a RICO claim. Plaintiffs' generic suggestion that Defendants' use of mail and wires were used against them in furtherance of an unspecified scheme by unspecified defendants on unspecified dates and

6

unspecified objectives does not rise to the level of an "indictable offense" nor does it satisfy the heightened pleading requirements to state a claim under RICO. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (Rule 9(b) requires a plaintiff to plead "the time, place, and content of the false representation, the person making them, and what the person gained from them."). "[D]etail is necessary when pleading the 'circumstances' of the fraud." *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 799 (D. Md. 1998). Plaintiffs ignore this requirement and omit from the amended complaint any factual averments related to the alleged conduct of Wilshire or Wilshire's involvement in any "enterprise" as required under the statute. In fact, Wilshire is not even specifically mentioned anywhere in the First Cause of Action. Such omission is fatal to Plaintiffs' RICO claim and requires dismissal of the First Cause of Action. *See Wang*, 612 F. Supp. at 445 (recognizing that a RICO claim alleging fraud as its underlying predicate act must do so with particularity or else be dismissed).

Another deficiency supporting dismissal of Plaintiffs' RICO claim is the absence of any allegations demonstrating a "pattern" of racketeering activity. A "pattern" requires "at least two acts of racketeering activity" within a 10-year period, *see* 18 U.S.C. § 1961(5), and moreover, requires more than just conduct directed at these particular Plaintiffs, *see Myers v. Finkle*, 950 F.2d 165, 169 (4th Cir. 1991) (dismissing RICO claim where plaintiff failed to sufficiently plead a "pattern" of racketeering activity that extended beyond themselves). Plaintiffs have failed to allege any specific fraudulent conduct perpetuated by any defendant apart from the alleged conduct directed toward Plaintiffs themselves. The allegations in the amended complaint are solely limited to Plaintiffs and the subject mortgage transaction and nothing else. The absence of specific allegations evidencing a pattern of allegedly fraudulent conduct that extends beyond Plaintiffs causes the RICO claim to fail as a matter of

7

law. *See Menasco*, 886 F.2d at 684 (noting that Rule 9(b)'s "requirement that averments of fraud be stated with particularity" is not satisfied when "the complaint fails to supply any details regarding . . . the identity or activity of the other persons purportedly defrauded by the defendant") (emphasis omitted); *Williams v. Equity Holding Corp.*, 245 F.R.D. 240, 243-44 (E.D. Va. 2007) (dismissing RICO against multiple defendants for failing to properly allege a pattern of racketeering based on mail and wire fraud).

**B.      Second And Third Causes Of Action: Plaintiffs Fail To State A Claim For Violation Of The Truth In Lending Act And The Home Ownership Equity Protection Act.**

    **1.     Servicers of mortgage loans, like Wilshire here, have no liability for any alleged violation of TILA or HOEPA**.

In the Second and Third Causes of Action, Plaintiffs claim that Defendants, including Wilshire, violated TILA and HOEPA by failing to accurately disclose to Plaintiffs certain terms of the subject mortgage loan and to provide Plaintiffs with certain written disclosures. *See* Amended Complaint, ¶¶ 35 and 39.[3]  Plaintiffs' claims are subject to dismissal as to Wilshire because Wilshire is alleged to be only a servicer of the subject mortgage loan and, as such, cannot be held liable under TILA or HOEPA.

Under the plain language of the statute, TILA imposes disclosure requirements on only those who extend credit to consumers by requiring each "creditor" to clearly and conspicuously disclose certain aspects of the credit transaction to the borrower. *See* 15 U.S.C. § 1632; 12 C.F.R. § 226.18. TILA also requires creditors to disclose to borrowers certain information, including finance charges,

---

[3] As a threshold matter, Plaintiff Tony Davis has no TILA or HOEPA claim because those claims are properly limited to those "who [are] obligated on . . . a consumer credit transaction." 15 U.S.C. § 1631(a). According to the amended complaint, Plaintiff Tony Davis is not an obligor nor a borrower, but rather someone who acquired an unspecified interest in the secured property approximately two and one-half years *after* the underlying loan transaction closed. *See* Amended Complaint, ¶¶ 13-15, 21. As such, Plaintiff Tony Davis is not entitled to any relief under either TILA or HOEPA. For ease of reference, however, Wilshire addresses all arguments in support of dismissal of the TILA and HOEPA claims to "Plaintiffs" generally.

8

annual percentage rates, and the right to rescind a transaction. *See* 15 U.S.C. § 1635. Much of the same can be said for HOEPA. HOEPA is an amendment to TILA and requires creditors making high cost mortgages to provide special, stream-lined high cost mortgage disclosures before the consummation of the transaction. *Id.,* § 1639. HOEPA also provides that assignees of high cost mortgages are subject to all claims and defenses that can be made against the original lender. *Id.,* § 1641. Accordingly, the requirements of TILA and HOEPA apply only to the original creditor and assignees of that creditor. *Id.,* §§ 1640, 1641.

Section 1640(a) "permits only a 'creditor' to be held liable for monetary penalty or an award of attorney's fees for a TILA violation." *Brodo v. Bankers Trust Co.*, 847 F. Supp. 353, 359 (E.D. Pa. 1994). A "creditor" is defined by TILA as someone who both "(1) regularly extends . . . consumer credit which is payable by agreement in more than four installment or for which the payment of a finance charge is or may be required" and "(2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(f).

Because Wilshire's only connection with the subject mortgage loan is as a mere servicer, and Wilshire is not alleged to be the original lender or to have an ownership interest in the mortgage loan (*i.e.*, assignee), Plaintiffs' Second and Third Causes of Action should be dismissed. Servicers of consumer obligations, like Wilshire here, have no liability for alleged violations of TILA or HOEPA. *See* 15 U.S.C. § 1641(f); *see Chow v. Aegis Mortg. Co.*, 286 F. Supp. 2d 956, 959 (N.D. Ill. 2003); *Payton v. New Century Mortg. Corp.*, 03-cv-333, 2003 WL 22349119, *5 (N.D. Ill. Oct. 14, 2003) (dismissing claims against servicer because "TILA expressly disclaims any liability for mere services 'unless the servicer is or was the owner of the obligation.'") (quoting 15 U.S.C. § 1641(f)(1)).

In *Chow*, the plaintiff brought an action for TILA violations against various parties, including the

9

loan servicer, GMAC.  In response, GMAC moved for summary judgment on the grounds that as the servicer of the mortgage loan – not the owner – it could not be held liable under TILA.  The district court agreed and granted GMAC summary judgment because "the only parties who can be liable for Truth in Lending Act . . . violations are the original creditor, 15 U.S.C. § 1640, and assignees of that creditor, 15 U.S.C. § 1640."  *Chow*, 286 F. Supp. 2d at 959.  The court explained that a servicer of a loan cannot be treated as an assignee for purposes of imposing TILA liability for alleged disclosure violations since the servicer never owned the loan.  *Id.*

Accordingly, consistent with *Chow*, *Payton* and the express language of the statute, Wilshire, in its capacity as the alleged servicer of the subject mortgage loan, cannot be held liable for any alleged violation of TILA or HOEPA.  Plaintiffs' Second and Third Causes of Action must therefore be dismissed as against Wilshire for failing to state a claim.

  **2. To the extent Plaintiffs seek monetary damages for alleged disclosure violations of TILA, that claim is time-barred by the applicable one-year statute of limitations.**

Even if Plaintiffs could state claims against Wilshire for violations of TILA and HOEPA, those claims would be barred by the statute of limitations to the extent Plaintiffs seek monetary damages.  Pursuant to 15 U.S.C. § 1640(e), an action for civil liability under TILA and HOEPA must be brought "within one year from the date of the occurrence of the violation."  In closed-end consumer credit transactions, such as the one alleged in this case, the limitations period begins to run on the date on which the loan is consummated, *i.e.*, the date of loan closing.  *See  Pastow v. OBA Fed. Savings & Loan Assoc.*, 627 F.2d 1370, 1380 (D.C. Cir. 1980); *see also Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980) (suit for TILA violations commenced 14 months after promissory note in connection with home improvement contract was signed held time-barred); *Morris v. Lomas and Nettleton Co.*, 708 F. Supp. 1198 (D. Kan. 1989) (one-year statute of limitations for recovering damages based on defendants

10

alleged violations of TILA began to run on date of loan closing, which was the date of occurrence of violation); *Tucker v. Beneficial Mortg. Co.*, 437 F. Supp. 2d 584, 589 (E.D. Va. 2006) (holding that if TILA violation is one of disclosure in a closed-end credit transaction, the date of occurrence of the violation is no later than the date the plaintiff enters into the loan agreement).

Here, Plaintiffs allege that they were not provided with certain disclosures required by TILA, 15 U.S.C. § 1638(a), and HOEPA, 15 U.S.C. § 1639. *See* Amended Complaint, ¶¶ 35, 39. These disclosures were to be made prior to the extension of credit, *see* 15 U.S.C. § 1638(b)(1) (the disclosures required under subsection (a) of this section shall be made before the credit is extended), but, according to Plaintiffs, they either were not made or were made containing inaccurate information. The amended complaint indicates that the subject loan closed sometime in September 2006. *See* Amended Complaint, ¶¶ 13-14. Consequently, Plaintiffs' TILA and HOEPA claims for the alleged disclosure violations expired one year later on September 30, 2007, at the latest. Because Plaintiffs waited almost three years after loan closing, until July 2, 2009, to file suit against Wilshire, Plaintiffs' Second and Third Causes of Action are time-barred to the extent they seek recovery of monetary damages and must therefore be dismissed with prejudice.

### 3. Plaintiffs have failed to allege sufficient facts demonstrating that the subject mortgage loan is subject to HOEPA.

To the extent Plaintiffs can overcome these first two arguments – which they cannot – Plaintiffs have failed to allege sufficient facts demonstrating that the subject mortgage is a "high rate loan" subject to HOEPA. To accomplish this, Plaintiffs must set forth facts satisfying one of two tests set forth in 15 U.S.C. § 1602(aa)(1). The second test – the one at issue in this case (*see* Amended Complaint, ¶ 39) – is met when the total "points and fees" payable by the borrower at or before closing will exceed the greater

11

of (i) 8 percent of the total loan amount or (ii) $400.[4] 15 U.S.C. § 1602(aa)(1)(B). HOEPA, Regulation Z, 12 C.F.R. § 226.32, and the Official Staff Commentary of the Federal Reserve Board Staff to Regulation Z, 12 C.F.R. § 226, Supp. I, provide a detailed methodology for determining whether the "total points and fees" payable by the consumer at or before the closing exceed 8% of the "total loan amount." "Points and fees," the numerator of the fraction, are defined by Regulation Z, 12 C.F.R. § 226.32(b)(1), to include all finance changes, mortgage broker compensation and "[a]ll items listed in § 226.4(c)(7) (other than amounts held for future payment of taxes) unless the charge is reasonable, the creditor receives no direct or indirect compensation in connection with the charge and the charge is not paid to an affiliate of the creditor." In turn, the "total loan amount," the denominator, "is calculated by taking the amount finance as determined according to § 226.18(b), and deducting any cost listed in § 226.32(b)(1)(iii) that is both included as points and fees under § 226.32(b)(1) and financed by the creditor." Official Staff Commentary to Regulation Z § 226.32(a)(1)(ii).

Plaintiffs have not alleged nor can they allege any facts demonstrating that, by applying the regulatory formula set forth above, the subject mortgage meets the threshold for the heightened disclosure requirements of HOEPA. Thus, Plaintiffs have failed to allege sufficient factual matter to state a claim to relief under HOEPA.

---

[4] This figure is adjusted annually. *See* 12 C.F.R. § 226.32(a)(1)(ii). For a loan made in 2006, the figure was $528. *See* 70 Fed. Reg. 46066 (2005).

C.  **Fourth Cause of Action: Plaintiffs Have Failed To Plead The Elements Of Fraud With The Requisite Specificity And Have Otherwise Failed To State A Claim For Fraud And Deceit.**

The Fourth Cause of Action is titled "Fraud and Deceit," however it is unclear from the vague and bare-bone allegations the specific misrepresentation(s) being alleged. To state a cause of action for fraud, Plaintiffs must allege each of the following elements:

(1) The defendant asserted a false representation of material fact to the plaintiff;

(2) The falsity of the representation was either known to the defendant or that the representation was made with reckless indifference as to its truth;

(3) The misrepresentation was made for the purpose of defrauding the plaintiff;

(4) The plaintiff relied with justification upon the misrepresentation; and

(5) The plaintiff suffered compensable injury resulting from the misrepresentation.

*See Maryland Envtl. Trust v. Gaynor,* 370 Md. 89, 97, 803 A.2d 512, 516 (2002) (emphasis added); *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337, 439 A.2d 534, 539 (1982).

When alleging these elements, Plaintiffs must meet the demanding requirement of Rule 9(b) that allegations of fraud be pleaded with sufficient particularity, including "particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams,* 193 F.R.D. at 250; *United States v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 526 (D. Md. 2006) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)) (same).

Here, Plaintiffs have failed to make any allegations regarding the specific misrepresentations they claim were made by Wilshire. Indeed, conspicuously absent from the amended complaint is any allegation that Wilshire in particular made any representation to Plaintiffs. *See* Amended Complaint, ¶¶ 26 and 44-46. Rather, Plaintiffs simply make generalized claims of misrepresentations by

13

unspecified parties. *Id.* at ¶ 44, "Plaintiffs in good faith relied in the false representation of defendants that plaintiffs would obtain the loan as previously and verbally discussed to the underwriting process." Plaintiffs make no effort to plead with any degree of specificity who made the allege "false representation," the contents of the representation, or when the representation was made as required under Rule 9(b). *See Adams,* 193 F.R.D. at 250. Further, Plaintiff does not plead any facts demonstrating how Wilshire acted with a specific intent to defraud or cause injury to Plaintiffs. *See* Amended Complaint, ¶¶ 44-46. Moreover, since Wilshire was not the lender (nor an assignee of the lender) under the subject mortgage loan transaction, it could not have many any misrepresentations to Plaintiffs in relation to the issuance of the loan. *Id.,* ¶ 8 ("Defendant Wilshire Credit Corporation . . . is the servicing agent for the alleged mortgage . . . ").

The absence of specific allegations of the time, place, speaker, and contents of the allegedly false acts or statements requires dismissal of Plaintiffs' claim for "Fraud and Deceit" against Wilshire. *See Lasercomb America, Inc. v. Reynolds*, 911 F.2d 970, 980 (4th Cir. 1990) (dismissing fraud claim pursuant to Fed. R. Civ. P. 12(b)(6) for failing to include specific allegations of the time, place, speaker, and contents of the allegedly false acts or statements); *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Group., Inc.*, 299 F. Supp. 2d 505, 525 (D. Md. 2004) (dismissing fraud claim against multiple defendants because the plaintiff failed to plead any fraudulent statements made by a particular defendant).

**D.** **<u>Fifth Cause Of Action</u>: Plaintiffs Fail To State A Claim For Breach Of Contract.**

The Fifth Cause of Action is labeled "Breach of Contract," but the allegations that follow do not come close to stating a claim against Wilshire. In typical conclusory fashion, Plaintiffs allege that "[t]he failure to produce a blue ink signature original note, an original mortgage, and the back of the original

14

note with all original indorsements and chain of title . . . establishes breach of contract by Defendants." Amended Complaint, ¶ 48. This bald assertion is insufficient to state a contract claim against Wilshire. The amended complaint is devoid of any allegation of the existence of a contractual obligation owed by Wilshire to Plaintiff or that Wilshire materially breach that obligation. *See Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."). Plaintiffs' failure to plead these elements requires dismissal of their claim for breach of contract against Wilshire. *See*, *e.g.*, *Waterfront Guard Assoc. v. Amstar Corp.*, 363 F. Supp. 1026, 1030 (D. Md. 1973) (the elements of a *prima facie* case for breach of contract must be stated in the complaint).

E.   <u>Sixth Cause Of Action</u>: **Plaintiffs Cannot State A Claim For "Predatory Lending."**

In one of the more curious claims in their amended complaint, Plaintiffs accuse Defendants of engaging in "predatory lending" by "fail[ing] and refus[ing] to put the actual agreement with plaintiffs and [sic] in one concise true document without inconsistencies, altered signatures, missing signatures and initials in violation of the local Civil Code." Amended Complaint, ¶ 50. In addition to being unintelligible and citing to a mysterious "local Civil Code," this allegation fails "to state a claim to relief that is plausible on its face." *Iqbal,* 129 S. Ct. at 1949. Other than labeling their claim as one for "predatory lending," Plaintiffs have not alleged a single example of any purported predatory practice by any specific defendant. Vague allegations and mere labels and conclusions are insufficient to withstand a motion to dismiss. *See Twombly*, 550 U.S. at 555. Accordingly, the Sixth Cause of Action should be dismissed pursuant to Rule 12(b)(6).

15

**F.      Seventh Cause Of Action: Plaintiffs Fail To State A Claim For Violation Of Their Civil Rights Under 42 U.S.C. §§ 1981 & 1983.**

In the Seventh Cause of Action, Plaintiffs try to assert a claim for violation of their civil rights under 42 U.S.C. §§ 1981 and 1983, based on the following allegation:

> [P]laintiffs allege that the conduct of defendants is based in part on violations of 42 USC sections 1981 and 1983, in that defendants singled out the unknowing citizens who had no knowledge of the lending process under the most harsh of terms due to their lack of understanding the flip game and vulnerability to making their "American Dream" reality.

Amended Complaint, ¶ 52. Even if this Court accepts this baseless allegation as true, Plaintiffs have failed to state a claim under sections 1981 and 1983 of Title 42 of the United States Code.

By its express language, 42 U.S.C. § 1981 guarantees each person, regardless of race or citizenship, freedom from discrimination in the making and enforcing of contracts. *See Runyon v. McCrary*, 427 U.S. 160, (1976); *Johnson v. Railway Express Agency*, 421 U.S. 454, 459 (1975). Claims of racial discrimination require that plaintiffs establish intentional and purposeful discrimination against them by the defendant, based on their race. *See General Building Contractors Assoc., Inc. v. Pennsylvania*, 458 U.S. 375-76 (1982). Here, Plaintiffs do not (nor can they) allege that Wilshire or any other defendant discriminated against them based on their race (which is not even revealed in the amended complaint). Absent such allegations, Plaintiffs have failed to state a claim for violation of 42 U.S.C. § 1981.

The same holds true for Plaintiffs' claim under 42 U.S.C. § 1983. To state a claim for violation of 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Neither of these elements are alleged in the amended complaint. Plaintiffs do not allege that Wilshire (or any other

16

defendant) violated their Constitutional rights nor do they allege that Wilshire (or any other defendant) ever acted under the color of state law.  Accordingly, Plaintiffs' claim for violation of 42 U.S.C. § 1983 fails as a matter of law.

G. **Eighth Cause Of Action**: Plaintiffs Cannot State A Claim For "Wrongful Foreclosure."

Wilshire is unaware of any judicial authority that recognizes a separate cause of action for "wrongful foreclosure" and discusses the required elements of that cause of action.  To the best of Wilshire's knowledge, no cause of action for "wrongful foreclosure" exists.  Plaintiffs' purported cause of action therefore fails.

H. **Ninth Cause of Action**: Plaintiffs Cannot State A Claim For Breach Of The Duty Of Good Faith And Fair Dealing.

Plaintiffs' claim for "breach of the duty of good faith and fair dealing" is subject to dismissal because Maryland does not recognize an independent claim for breach of this duty.  *See e.g. Swedish Civ. Aviation Admin. v. Project Mgmt. Enters.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002) (confirming that a breach of the duty of good faith and fair dealing is part of a breach of contract claim and not a separate cause of action); *Cutler v. Wal-Mart Stores, Inc.*, 175 Md. App. 177, 195 (2007) (stating that "Maryland law does not recognize an independent cause of action for breach of implied covenant of good faith and faith dealing" rather, it "simply supports another cause of action at law, *e.g.* breach of contract"); PLEADING CAUSES OF ACTION IN MARYLAND, Paul Mark Sandler & James K. Archibald, §2.1 (2004) ("Maryland does not recognize an independent cause of action for breach of implied contractual duty of good faith and fair dealing").

17

I.      **Tenth Cause of Action: Plaintiffs Fail To State A Claim For Injunctive Relief.**

Although labeled as a cause of action, injunctive relief is a remedy and not an affirmative claim. However, a cause of action must exist before injunctive relief may be granted. For the reasons stated above, Plaintiffs cannot prevail on any cause of action against Wilshire. Accordingly, Plaintiffs' request for injunctive relief as against Wilshire must be denied.

## IV.   CONCLUSION

For the reasons set forth herein, Wilshire is entitled to dismissal with prejudice of Plaintiffs' amended complaint pursuant to Rule 12(b)(6).

Respectfully submitted,

/s/
Brian L. Moffet
Fed. Bar No. 13821

GORDON, FEINBLATT, ROTHMAN,
 HOFFBERGER & HOLLANDER, LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland  21202-3332
Telephone No.: 410/576 - 4291
Fax No.: 410/576 – 4246
Email: bmoffet@gfrlaw.com
**Attorneys for Defendant
Wilshire Credit Corporation**

18