## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TONY DAVIS, et al.** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. **PJM 09-1505** |
| | * | |
| **WILMINGTON FINANCE, INC., et al.** | * | |
| | * | |
| Defendants | * | |

## OPINION

Tony Davis, William Woodrow, and Susan Woodrow, acting *pro se*, have sued multiple Defendants, alleging ten separate counts arising out of the Woodrows' 2006 refinancing of the mortgage on their Damascus, Maryland home. Defendants have filed separate motions to dismiss or motions for summary judgment, none of which Plaintiffs have responded to. The Court has reviewed the entire record, including the pleadings and exhibits, with respect to these motions. For the following reasons, the Court **GRANTS** all these motions: Wilshire Credit Corporation's Motion to Dismiss [Paper No. 11]; Altabanc's Motion to Dismiss [Paper No. 12]; Veritas Title, LLC's Motion to Dismiss [Paper No. 18]; Jacob Geesing, Carrie M. Ward, Howard N. Bierman, and Jacob Geesing, Esquire's Motion to Dismiss and/or Motion for Summary Judgment [Paper No. 25]; Wilmington Finance, Inc's Motion for Summary Judgment [Paper No.

32]; and Dora A. Denman's Motion to Dismiss [Paper No. 46].[1]  As a result, the case will be dismissed as to all Defendants.

## I.

Although the Complaint is bare on facts, it can be discerned that in September 2006, Plaintiffs William and Susan Woodrow refinanced the mortgage on their home in Damascus, Maryland.[2]  They engaged Defendant Altabanc Financial Corporation ("Altabanc") as the mortgage broker, obtained an appraisal from Defendant Dora Denman, and were approved for a loan by Defendant Wilmington Finance, Inc. ("Wilmington"). The Woodrows went to settlement, got the mortgage loan, and allegedly made timely repayments until they suffered financial setbacks.

On October 2, 2008, the Woodrows defaulted on their mortgage payments.  Wilmington, the original lender, had sold its Note to the U.S. Bank National Association, as Trustees for the Speciality Underwriting and Residential Finance Trust Mortgage Loan Asset-Backed Certificate Series 2007-BC1, which was serviced by Defendant Wilshire Credit Corporation ("Wilshire"). Wilshire subsequently sought to foreclose on the Woodrows' property, by Deed of Appointment dated February 4, 2009, Defendants Jacob Geesing, Carrie M. Ward, and Howard N. Bierman

---

[1] Plaintiffs have several outstanding motions: Plaintiffs' Request to Correct the Record [Paper No. 31]; Plaintiffs' Request/Motion for Extension of Time to Serve RJ Appraisals [Paper No. 40]; Plaintiffs' Motion to Reopen Case and Motion for Leave to File Amended Pleading [Paper No. 42]; and Plaintiffs' Motion to Reopen Case and Proceed to Discovery [Paper No. 45]. The Court **GRANTS** Plaintiffs' Motion to Correct the Record [Paper No. 31].  Because RJ Appraisals has been served, Plaintiffs' Motion for Extension of Time [Paper No. 40] is deed **MOOT**.  Finally, the case is not closed.  Accordingly, Plaintiffs' Motions to Reopen Case [Paper Nos. 42 & 45] are **DENIED**.

[2] While not a participant in the refinancing transaction, Davis suggests that in May 2009 he acquired some type of "equity interest" in the secured property.

(collectively "Geesing Defendants"), who were appointed Substitute Trustees by Wilshire initiated a foreclosure action *in rem* on the Woodrows' property.  On April 16, 2009, the foreclosure sale was cancelled and the Geesing Defendants never sold the Woodrows' property at auction.  This suit followed.

On June 18, 2009, Plaintiffs filed an Amended Complaint seeking damages and injunctive relief, alleging that Defendants had violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Truth in Lending Act ("TILA"), the Home Ownership Equity Protection Act ("HOEPA"), the "Civil Code," engaged in fraud and deceit, breached the refinancing contract, violated Plaintiffs' civil rights, initiated a wrongful foreclosure, and breached their duty to engage in good faith and fair dealing.  Plaintiffs claim that at the time the Woodrows entered into the refinancing of their home, they agreed to the loan terms based on allegedly fraudulent representations by the parties involved in the loan process.   Additionally, Plaintiffs claim that Defendants acted fraudulently because "they" (Plaintiffs do not specify which Defendant) did not produce "blue ink signature original notes," which are presumably associated with the refinancing.

Defendants filed separate motions to dismiss or motions for summary judgment, arguing that Plaintiffs have failed to state a claim upon which relief may be granted.  On December 7, 2009, the Court denied Plaintiffs' Motion to Amend their Complaint and directed them to respond to the pending motions within twenty days.  Plaintiffs responded that they had not yet served all Defendants and, therefore, were not required to respond to the pending motions.  On January 4, 2010, the Court advised Plaintiffs that their argument was untenable and granted Plaintiffs an additional twenty days to respond to the pending motions.   To date, Plaintiffs have

-3-

not responded to any of Defendants' motions, despite explicit direction from the Court to do so and after numerous extensions for them to do so.

## II.

Except in certain specified cases, a complaint must satisfy the simplified pleading standard of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Two recent Supreme Court cases clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcraft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make clear that the simplified pleading standard of Federal Rule of Civil Procedure 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Accordingly, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In making its determination, the court must consider all well-pled allegations in a complaint as true and construe all factual allegations in a light most favorable to the plaintiff. *See GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). The court need not, however, accept conclusory factual allegations devoid of any reference to actual events. *See E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Complaints filed by *pro se* plaintiffs are "to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

### III.

The Court agrees with Defendants that all of Plaintiffs' claims against them fail to state a claim upon which relief may be granted.  While claims do not have to be pled in great detail, a complaint must at least contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  The Supreme Court has explained that this requirement means the plaintiff must set forth sufficient facts to state a plausible claim for relief. *Twombly*, 550 U.S. at 570.  Conclusory statements without "reference to actual events" will not suffice.  *E. Shore Markets*, 213 F.3d at 180.

The Complaint fails meet this standard.

### A.

In their First Cause of Action, entitled "Civil RICO," Plaintiffs allege, in bare and conclusory fashion, that "Defendants" (without identifying which Defendant): (1) fraudulently misrepresented their right to collect fees from Plaintiffs; (2) fraudulently misrepresented the true cost of payment by failing to disclose all documents and all fees; (3) backdated documents in connection with the mortgage transaction; (4) failed to make available for inspection the original blue ink signature of the note; (5) failed to properly record transfers of the note; and (6) knowingly and intentionally overbilled Plaintiffs.

In order for a RICO claim to survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must allege "(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Plaintiffs must allege each of these elements to state a claim.  *Id.*  Plaintiffs' Amended Complaint fails to do so for at least two reasons.  First,

they have not sufficiently alleged that Defendants engaged in "racketeering activity," which is defined as "any act or threat involving" specified state-law crimes, any "act" indictable under specific federal statutes, and certain federal "offenses."  18 U.S.C. § 1961(1).  In order to survive a motion to dismiss, a plaintiff must make more than conclusory allegations, and must instead satisfy Federal Rule of Civil Procedure 9(b)'s requirement that averments of fraud be stated with specificity.  *See Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (citations omitted).

Here, Plaintiffs allege that "Defendants regularly used the United States mails and wire services" for the purposes of "obtaining credit information, receiving payments by mail, mailing collection letters . . . and mailing other documents related to the loan."  Despite these conclusory allegations, Plaintiffs provide no specifics as to which Defendant engaged in which activity, what date these activities occurred, or what the content of each supposed activity was. Accordingly, Plaintiffs have failed to comply with Rule 9(b)'s heightened pleading requirement as they have omitted from their Amended Complaint any factual averments related to the alleged conduct of any Defendant or that any Defendant was involved in any "enterprise" as required under the statute.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (noting that under Rule 9(b), the circumstances to be pled with particularity are "the time, place, and content of the false representations, as well as the identity of the person making the misrepresentation, and what he obtained thereby" (citations omitted)).  The Rule 9(b) problem is exacerbated in this case where multiple Defendants are involved and the pleading alleges some type of fraudulent scheme without clearly identifying which Defendant played which role.  *See Wang Labs., Inc. v. Burts*, 612 F. Supp. 441, 445 (D. Md. 1984) (dismissing

some defendants in RICO suit predicated on mail fraud where plaintiffs grouped multiple

defendants together under the heading of "defendants" in three conclusory paragraphs).  As

pointed out by multiple Defendants, no Defendant is specifically mentioned anywhere in the

First Cause of Action.

Plaintiffs' Amended Complaint also fails to support a claim under RICO because it gives

is no indication that Defendants engaged in a "pattern" of racketeering activity.  A "pattern"

requires "at least two acts of racketeering activity" within a 10-year period.  18 U.S.C. §

1961(5).  Moreover, a pattern requires more than just conduct directed at these particular

Plaintiffs and must constitute "ongoing unlawful activities whose scope and persistence pose a

special threat to social well-being."  *See Int'l Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 155 (4th

Cir. 1987); *see also Menasco*, 886 F.2d at 684 (dismissing RICO claim where plaintiff failed to

sufficiently plead a "pattern" of racketeering activity that extended beyond themselves).  Here,

Plaintiffs have failed to allege any specific fraudulent conduct perpetuated by any Defendant

apart from the alleged conduct directed to Plaintiffs themselves.  All that is pled are allegations

limited solely to Plaintiffs and their mortgage transaction.  Accordingly, the absence of any

specific allegations evidencing a "pattern" of racketeering that extends beyond Plaintiffs is fatal

to their RICO claim, and the claim is dismissed against all Defendants.

**B.**

In their Second and Third Causes of Action, Plaintiffs claim that Defendants (again not

identifying which Defendant) violated the Truth in Lending Act ("TILA") and the Home

Ownership Equity Protection Act ("HOEPA") by failing to accurately disclose to Plaintiffs

certain terms of the subject mortgage loan and to provide Plaintiffs with certain written

disclosures.  TILA is a federal statute applicable only to creditors and governs the terms and conditions of consumer credit by requiring that lenders disclose certain details about loans, fees, and costs.  *See* 15 U.S.C. § 1601, et seq.  HOEPA, a 1994 amendment to TILA, requires lenders making high rate loans to provide additional disclosures for certain home mortgages to borrowers.  *See* 15 U.S.C. § 1639(a)(1).  A private right of action exists under both statutes.  *See* 15 U.S.C. § 1640.[3]

As a threshold matter, TILA and HOEPA only apply to creditors and the assignees of that creditor.  A "creditor" is defined by TILA as someone who both: "(1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required;" and "(2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness."  15 U.S.C. § 1602(f).

Here, only Wilmington, the original lender, is a creditor and thus subject to TILA and HOEPA.  Defendant Wilshire, as the servicer of the mortgage loan and not an assignee or owner of the loan, has no liability for alleged violations of TILA or HOEPA.  *See* 15 U.S.C. § 1641(f); *see also Chow v. Aegis Mortg. Co.*, 286 F. Supp. 2d 956, 959 (N.D. Ill. 2003) (holding that servicers of loans are not subject to TILA unless they are also the owner of the loan).  Defendant Altabanc's only connection with the subject loan is as the broker, and thus it has no liability for alleged violations of TILA or HOEPA.  *See Robey-Harcourt v.Bencorp Fin. Co.*, 326 F.3d 1140,

_____

[3] However, as noted by various Defendants, TILA and HOEPA's private right of action only extends to those "who [are] obligated on . . . a consumer credit transaction."  15 U.S.C. § 1631(a).  Davis is neither an obligator nor a borrower, but, rather, someone who aquired an unspecified interest in the Woodrows' property more than two years after the underlying loan transaction closed.  Accordingly, he is not entitled to relief under either TILA or HOEPA.

1142 (10th Cir. 2003) (holding that a mortgage broker "is not a creditor under these definitions, and thus TILA is inapplicable").  Defendant Veritas Title, LLC ("Veritas") only connection to the mortgage loan is that it performed the title work for the transaction and settled the loan. Because Veritas is not alleged to be the original lender or to have an ownership interest in the loan, it is not subject to either TILA or HOEPA.  Defendant Denman is also not subject to TILA or HOEPA as she was the appraiser of the property in question and in no way extended any credit to Plaintiffs.  Finally, the Geesing Defendants cannot violate TILA or HOEPA by acting as Substitute Trustees or as a law firm because they are not creditors as defined by those statutes. *See Barbosa v. Aurora Loan Services LLP*, 2009 WL 2032151, at *4 (D. Md. 2009) (holding that "TILA does not apply to [Substitute] Trustees because they are not 'creditors' as defined by 15 U.S.C. § 1602(f), nor were they involved in the origination of the loan").  Accordingly, Plaintiffs have failed to state a TILA or HOEPA claim against Defendants Wilshire, Altabanc, Veritas, Denman, or the Geesing Defendants and the TILA and HOEPA claims against these Defendants are dismissed.

As against Wilmington, to the extent Plaintiffs seek monetary damages for alleged disclosure violations of TILA and HOEPA, those claims are time-barred by the applicable one-year statute of limitations.  *See* 15 U.S.C. § 1640(e) (stating that an action for civil liability under TILA and HOEPA must be brought "within one year from the date of the occurrence of the violation").  The statute of limitations begins to run when the borrower accepts the creditor's extension of credit.  *See Woodrow v. Vericrest Financial, Inc.,* 2009 WL 4348594 (D. Md. 2009).  Here, Plaintiffs entered into the subject loan, and were allegedly not provided certain disclosures, on September 26, 2006.  Plaintiffs did not file their Complaint in this matter until

July 2, 2009, almost three years after closing.  Accordingly, TILA and HOEPA's one year statute

of limitations bars Plaintiffs' statutory damages claim for Defendant Wilmington's--or for any

other Defendant's--alleged failure to properly disclose.

Plaintiffs' claim for rescission is also without merit.  Plaintiffs have failed to allege that

they are able to fulfill their obligations under 15 U.S.C. § 1635(b) and 12 C.F.R. § 226.23(d),

since they have not demonstrated an ability to repay the loan proceeds.  As Defendant

Wilmington correctly notes, rescission is an empty remedy without Plaintiffs' ability to pay back

what they have received, minus interest and finance charges.  *See Am. Mortgage Network, Inc. v.*

*Shelton*, 486 F.3d 815, 820-21 (4th Cir. 2007).

Finally, Plaintiffs have failed to allege sufficient facts demonstrating that the subject

mortgage loan is subject to HOEPA.  HOEPA requires creditors making high rate loans to

provide certain disclosure before the consummation of the transaction.  15 U.S.C. § 1639(a).  To

demonstrate that the subject loan was a high rate loan subject to HOEPA, Plaintiffs must set

forth facts satisfying one of two tests set forth in 15 U.S.C. § 1602(aa)(1).  The second test – the

one at issue in this case – is met when the total "points and fees" payable by the borrower at or

before closing will exceed the greater of: (1) 8 percent of the total loan amount; or (2) $400.

Plaintiffs have not alleged anywhere in their Amended Complaint that by applying the regulatory

framework established in 15 U.S.C. § 1602(aa)(4), the subject mortgage meets the threshold for

the heightened disclosure requirements of HOEPA.  Accordingly, Plaintiffs have failed to state a

HOEPA claim against any Defendant and the claim is dismissed as to all Defendants.

**C.**

Plaintiffs' Fourth Cause of Action alleges "Fraud and Deceit."  To prevail on a claim for

fraud under Maryland law, Plaintiffs must allege and prove that: (1) Defendants made a false representation of a material fact to Plaintiffs; (2) the falsity of the representation was either known to Defendants or was made with reckless indifference to its truth; (3) the misrepresentation was made for the purpose of defrauding Plaintiffs; (4) Plaintiffs relied with justification upon the misrepresentation; and (5) Plaintiffs suffered damages as a result of the misrepresentation. *Md. Envtl. Trust v. Gaynor*, 803 A.2d 512, 516 (2002). When alleging these elements, Plaintiffs must meet the demanding requirement of Federal Rule of Civil Procedure 9(b) that allegations of fraud must be plead with sufficient particularity, including "particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements." *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000).

Here, Plaintiffs have failed to make any allegations regarding the specific misrepresentations they claim were made by any Defendant. Plaintiffs make only generalized claims of misrepresentations by unspecified parties. The absence of specific allegations of time, place, speaker, and contents of the allegedly false acts or statements results in dismissal of Plaintiffs' claim for "Fraud and Deceit" against all Defendants. *See, e.g., Woodrow v. Vericrest Financial, Inc.,* 2009 WL 4348594 (D. Md. 2009) (dismissing plaintiffs' fraud claim pursuant to Rule 9(b) for lack of particularity); *Harte-Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp. 2d 505, 525 (D. Md. 2004) (dismissing fraud claim against multiple defendants because plaintiff failed to plead any fraudulent statements made by a particular defendant).

Even construing the pleadings extremely liberally in light of the fact that Plaintiffs are acting *pro se*, the only possible Defendant that may have made a material misrepresentation to

Plaintiffs in relation to the issuance of the loan is Wilmington, the original lender under the

subject mortgage loan transaction.  Wilmington, however, fully disclosed to the Woodrows the

key terms of the Loan, including the rates of interest and the fees and finance charges associated

with the loan.  Exhibit G and H of Wilmington's Motion make clear that on September 26, 2006,

the Woodrows signed the Truth in Lending Disclosure Statements, which set forth the annual

percentage rate of interest, the finance charge, the amount financed, and the total payments.  On

the same date, Susan Woodrow signed the Variable Rate Mortgage Program Disclosure, at

Exhibit F to Wilmington's Motion, which disclosed that the Woodrows had a variable rate of

interest.  Plaintiffs' vague allegations of wrongdoing against Wilmington are refuted by the loan

documents signed by the Woodrows and, therefore, Plaintiffs' claim of "fraud and deceit" is

dismissed against all Defendants.

### D.

Plaintiffs also appear to assert a claim for breach of contract in Count Five.  In order to

prevail on a claim for breach of contract under Maryland law, "a plaintiff must prove that the

Defendant owed the Plaintiff a contractual obligation and that the defendant breached that

obligation."  *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (2001).  Plaintiffs' must plead

these elements in the complaint in order to establish a prima facie case for breach of contract.

*See, e.g., Waterfront Guard Assoc. v. Amstar Corp.*, 363 F. Supp. 1026, 1030 (D. Md. 1973).

Plaintiffs' claim for breach of contract in this case is laid out in a single paragraph as

follows:

> When Defendants entered into the transactions as set out above with plaintiffs, they had
> no intention of performing as promised.  The failure to produce a blue ink signature
> original note, an original mortgage, and the back of the original note with all original

indorsements [sic] and chain of title further establishes breach of contract by the Defendants.  The Defendants, now known and to be identified, were only interested in obtaining commissions and fees related to the transaction which is the subject of this lawsuit.

Nowhere do Plaintiffs identify any contractual obligation any Defendant purportedly breached or that any Defendant materially breached that obligation.  Furthermore, no Defendant appears to have had a contractual obligation to provide Plaintiff with any of the information that Defendant allegedly failed to disclose.  The loan agreement contains no provision requiring any Defendant to produce any type of blue ink signature note or any other document claimed by Plaintiffs.  The claim for breach of contract fails and is dismissed against all Defendants.

### E.

Plaintiffs next allege that Defendants engaged in "predatory lending" by "fail[ing] and refus[ing] to put the actual agreement with plaintiffs and [sic] in one concise and true documents without inconsistencies, altered signatures, missing signatures and initials in violation of the local Civil Code."  This allegation fails to articulate any purported act of predatory lending by any Defendant, and fails to cite the "local Civil Code" upon which Plaintiffs seek to base their claim.  Such vague allegations and labels of "predatory lending" are insufficient to withstand a motion to dismiss.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, Plaintiffs' Sixth Cause of Action is dismissed against all Defendants.

### F.

In the Seventh Cause of Action, Plaintiffs assert a claim for violation of their civil rights under 42 U.S.C. §§ 1981 and 1983.  They claim that violation of these statutes occurred because "defendants singled out the unknowing citizens who had no knowledge of the lending process

under the most harsh of terms due to their lack of understanding the flip game and vulnerability

to making their 'American Dream' reality."

  To establish a claim under § 1981, Plaintiffs must show purposeful discrimination against

them by Defendants based on their race.  *See Gen. Bldg. Contractors Assoc., Inc. v.*

*Pennsylvania*, 458 U.S. 375-76 (1982).  Here, Plaintiffs do not allege that any of the Defendants

discriminated against them based on their race, which is not even revealed in the pleadings.

Accordingly, Plaintiffs have failed to establish a § 1981 claim against any Defendant.

  The same holds true for Plaintiffs' claim under § 1983.  To state a claim for a violation of

this statute, Plaintiffs must allege that: (1) a right secured by the Constitution or laws of the

United States was violated; and (2) that the alleged violation was committed by a person acting

under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Neither of these elements

are alleged in the Amended Complaint – nowhere do Plaintiffs allege that any Defendant

violated their Constitutional rights or that any Defendant ever acted under color of state law.

Accordingly, this claim likewise fails against all Defendants.

## G.

  As to Count Eight entitled "Wrongful Foreclosure," Plaintiffs claim that "Plaintiffs'

property has been wrongfully posted for sale by Defendants without proper proof and authority

and without giving appropriate notice to Plaintiffs."  Plaintiffs cite no authority, and the Court

can find none, that "Wrongful Foreclosure" is a separate cause of action in Maryland.

Furthermore, and more importantly, even assuming such a cause of action exists, no foreclosure

sale actually occurred in this case, and from all that appears Plaintiffs remain the current

occupants of the Damascus, Maryland property.  The purported cause of action is dismissed against all Defendants.

## H.

Plaintiffs next allege that Defendants breached a duty of good faith and fair dealing by failing to negotiate with Plaintiffs in good faith "after Plaintiffs requested mortgage payment assistance or time to correct the economic conditions."  In Maryland, there is no separate or independent cause of action for breach of good faith and fair dealing.  *See Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 444 (4th Cir. 2001) (holding that a claim that seeks redress for alleged lack of good faith and fair dealing in performing obligations under an alleged contract is not cognizable under Maryland Law).  Accordingly, this cause fails against all Defendants.

## I.

Finally, Plaintiffs request the Court to enter an injunction rescinding "prior state court proceedings" and to "prevent such proceedings in the future."  Defendants argue that a request for injunctive relief does not constitute a separate cause of action, but instead, can only stand as a remedy for a cause of action.  The Court agrees.  *See Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678 n.1 (D. Md. 2001) (noting that "a request for injunctive relief does not constitute an independent cause of action; rather the injunction is merely the remedy sought for the legal wrongs alleged in the nine substantive counts").  The Court agrees because the Court has dismissed all of Plaintiffs' claims against all Defendants; the request for injunctive relief cannot stand and is denied.

**IV.**

For the foregoing reasons, the Court **GRANTS** the following motions: Wilshire Credit Corporation's Motion to Dismiss [Paper No. 11]; Altabanc's Motion to Dismiss [Paper No. 12]; Veritas Title, LLC's Motion to Dismiss [Paper No. 18]; Jacob Geesing, Carrie M. Ward, Howard N. Bierman, and Jacob Geesing, Esquire's Motion to Dismiss and/or Motion for Summary Judgment [Paper No. 25]; Wilmington Finance, Inc's Motion for Summary Judgment [Paper No. 32]; and Dora A. Denman's Motion to Dismiss [Paper No. 46].

A separate Order will issue implementing these rulings and closing the case.

_____
**/s/**
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

March 26, 2010